SL COMMUNICATIONS, INC., Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee.

Dorothy O. Schulze and Deborah Brigham, a General Partnership, Appellant,

v.

Federal Communications Commission, Appellee.

Nos. 98–1076, 98–1103.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 1, 1999.

Decided March 19, 1999.

Barry A. Friedman argued the cause for appellant SL Communications, Inc. With him on the briefs was Michael L. Martinez.

Donald E. Martin was on the briefs for appellant Dorothy O. Schulze and Deborah Brigham, a General Partnership.

Gregory M. Christopher, Counsel, Federal Communications Commission, argued the cause for appellee. With him on the brief were Christopher J. Wright, General Counsel, and Daniel M. Armstrong, Associate General Counsel. Pamela L. Smith, Counsel, entered an appearance.

Before: EDWARDS, Chief Judge, GINSBURG and TATEL, Circuit Judges.

Opinion for the court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

The Federal Communications Commission disqualified appellant Dorothy O. Schulze and Deborah Brigham ("S&B") from a comparative television licensing proceeding due to serious misconduct. Because no other qualified applicant remained, S&B proposed to "settle" the proceeding by substituting in its place appellant SL Communications ("SL"), an established, reputable broadcaster willing to reimburse S&B for the expenses it incurred pursuing the license. Relying on its policy of deterring misconduct, the Commission rejected the settlement. Because we find the disqualification and the rejection of the settlement wholly justified, we affirm.

I

In 1985, appellant S&B, a partnership consisting of two sisters, applied for a television broadcast license for UHF channel 52 in Blanco, Texas, a small town forty miles west of San Antonio. The Commission designated S&B and two other applicants to participate in comparative hearings before an administrative law judge.

Following months of hearings, the ALJ disqualified S&B on several grounds. *See Opal Chadwell,* 1 F.C.C.R. 120 (1986) ("*ALJ Order*"). First, he found that S&B improperly failed to disclose that one of its principals, Dorothy Schulze, had previously applied for another television broadcast license in San Antonio. Rejecting as "pure fabrication" Schulze's explanation that she never had an interest in the San Antonio application, the ALJ found that Schulze lied during the Blanco hearings to cover up the omission

in S&B's application. *Id.* at 124 ¶¶ 45–46. The ALJ also found that Schulze lied to a different ALJ—one conducting comparative hearings regarding a television broadcast license in Castle Rock, Colorado—about her involvement in yet another application for a license in Conroe, Texas. *See id.* at 125 ¶ 66.

Second, the ALJ found that S&B was actually controlled not by Schulze and Brigham but rather by their brother, Richard Ozan, and that Ozan had convinced his sisters to act as nominal applicants for the Blanco license in order to take advantage of then-applicable affirmative action programs affording preferences to women-owned license applicants. According to the ALJ, Ozan was the real party-in-interest not only in S&B's Blanco application, but also in nine other applications then pending before the Commission, including one in the Conroe proceeding. *See id.* at 126 ¶ 70.

Third, the ALJ found that in addition to lying about her interest in the San Antonio application, Schulze had lied in her Castle Rock application about whether she had obtained a transmitter site in that area. Although S&B's communications consultant, Ron Baptist, had originally testified that he had secured a Castle Rock transmitter site for Schulze, Baptist later recanted, admitting that he actually had nothing to do with securing a site. Baptist then testified that he and S&B's lawyer, Donald Martin, concocted his false story over breakfast the morning he first testified. Schulze was at that breakfast. The ALJ found not just that Schulze lied about the transmitter site, but also that Schulze and Martin had suborned Baptist's perjury. *See id.* at 127 ¶ 93.

After disqualifying S&B on the basis of these findings, the ALJ disqualified a second applicant, finding that it had made misrepresentations in its pleadings. He awarded the Blanco license to the lone remaining applicant. The Commission's Review Board affirmed. *See Opal Chadwell,* 2 F.C.C.R. 5502 (1987) (*"Review Board Order"*). Agreeing with the ALJ that Ozan exercised de facto control over S&B's application, the Review Board stated that "it was clearly demonstrated that [Ozan] was the prime mover, principal and agent responsible for every aspect of

the prosecution of the application[ ]." *Id.* at 5509 ¶ 31. It also affirmed the ALJ's finding that Schulze lied about the Castle Rock transmitter site. *See id.* at 5510 ¶ 34. Because the real party-in-interest and Castle Rock veracity issues each independently supported S&B's disqualification, the Review Board declined to review the ALJ's other findings, including his finding that Schulze and Martin suborned Baptist's perjury. *See id.*

Although the Commission denied review of S&B's disqualification in 1989, it remanded the case to the ALJ for further factfinding regarding the successful applicant's financial qualifications. *See Opal Chadwell,* 4 F.C.C.R. 1215 (1989). The ALJ then dismissed that applicant for failing to participate in discovery. *See Opal Chadwell,* FCC 89M–1568, Docket No. 85–269 (Jun. 2, 1989). At that point, no applicants remained in the Blanco proceeding.

Petitioning the Commission for reconsideration, S&B argued that the ALJ's findings, especially that Ozan exercised de facto control over a sham application in Conroe, were inconsistent with those of the Conroe ALJ, who had subsequently found otherwise. Because the Review Board had remanded the Conroe proceeding for further consideration in light of the Blanco findings, the Commission stayed its order denying review of S&B's disqualification, holding S&B's petition for reconsideration in abeyance pending the Conroe remand. *See Opal Chadwell,* 5 F.C.C.R. 3227 (1990). The Conroe ALJ then reversed himself, agreeing with the Blanco ALJ that Ozan controlled a sham application in Conroe. *See Montgomery Cty. Media Network,* 6 F.C.C.R. 2963 (1991).

In 1995, while its petition for reconsideration was still in abeyance, S&B petitioned the Commission to amend its Blanco application to substitute in its place SL, the other appellant in this case. Under the proposed "settlement," the Commission would award the Blanco license to SL, and SL would pay S&B $227,000—a sum S&B claimed was less than the expenses it incurred pursuing the Blanco license. At oral argument, SL's counsel conceded that most of the $227,000 represented Martin's fees. The Commission denied the

petition to amend, stating that because S&B had not demonstrated that it was qualified to receive the license, it had nothing to assign to SL. *See Dorothy O. Schulze and Deborah Brigham,* 12 F.C.C.R. 2602 (1997) (*"Commission Order I"*). Moreover, the Commission explained, given S&B's unconscionable behavior, allowing S&B to recover its expenses would run counter to its policy of deterring misconduct during agency proceedings. *Id.* at 2604–05 ¶ 9 & n. 1. The Commission also denied S&B's petition for reconsideration of its disqualification; that petition had been in abeyance for seven years.

Six months later, Congress enacted the Balanced Budget Act of 1997. *See* Pub.L. No. 105–33, 111 Stat. 251 (1997). Section 3002(a)(3) of that Act added section 309(*l*) to the Communications Act of 1934. *See* 111 Stat. at 260 (codified at 47 U.S.C.A. § 309(*l*) (Supp.1998)). Section 309(*l*) authorized the Commission to resolve then-pending comparative proceedings through competitive auctions. It also required the Commission, during the 180–day period following its enactment, to "waive any provisions of its regulations necessary" to allow competing applicants to settle conflicts between or among their applications. Relying on this new provision, S&B, this time joined by SL, once again petitioned the Commission for reconsideration, arguing that section 309(*l*) required the Commission to waive its normal rule against third-party settlements of comparative proceedings. Denying the petition, the Commission held that section 309(*l*) applies only to settlements between *competing* applicants, not between a lone applicant and a third party. *See Opal Chadwell,* 13 F.C.C.R. 3259 (1998) (*"Commission Order II"*).

S&B appeals the disqualification of its application. Joined by S&B, SL appeals the rejection of the proposed settlement. We review the Commission's decisions under the familiar arbitrary and capricious standard.

*See* 5 U.S.C. § 706(2)(A) (1994); *Serafyn v. FCC,* 149 F.3d 1213, 1219 (D.C.Cir.1998).

## II

■ Represented in this appeal by Martin, S&B spends nearly half its brief challenging the ALJ's finding that Martin and Schulze suborned Baptist's perjury. We have no authority to consider that issue, however, for the Review Board expressly declined to reach it. *See Review Board Order,* 2 F.C.C.R. at 5510 ¶ 34 (concluding that "we need not reach the more serious question whether the applicant's conduct constitutes 'subornation of perjury'" because Schulze "proffer[ed] a false version of the events surrounding the securing of the [transmitter] site") (citation omitted).* We turn to S&B's challenges to the real party-in-interest and lack-of-candor findings.

■ In determining that Ozan was the real party-in-interest behind S&B's application, the ALJ credited the testimony of Thomas Root, Schulze's former attorney, and Ronald Baptist, S&B's communications specialist. Both had described Ozan's behind-the-scenes role with respect to S&B's application. The ALJ rejected as "sheer fabrication"—a "web of lies," as he also put it—the contrary testimony of three S&B witnesses, including Schulze. *ALJ Order,* 1 F.C.C.R. at 124–25 ¶ 55, 125–26 ¶ 69. We disturb credibility findings affirmed by the Commission only if "patently unsupportable." *Williams Enterprises v. NLRB,* 956 F.2d 1226, 1232 (D.C.Cir.1992).

S&B argues that Root's testimony should not have been credited because shortly after the Commission first denied review of S&B's disqualification, Root was convicted on numerous state and federal charges of fraud, racketeering, and conspiracy. *See Petroleum V. Nasby Corp.,* 10 F.C.C.R. 6029, 6030 ¶ 6 (1995). Rejecting this argument, the Commission observed that the Review Board had determined (after the Conroe remand)

---

* Perhaps Martin's belief that he needed to defend his own conduct led him to place so much emphasis on an issue irrelevant to his client's appeal. *Cf.* MODEL RULES OF PROFESSIONAL CONDUCT Rule 1.7 cmt. 6 (1983) ("The lawyer's own interests should not be permitted to have an adverse effect on representation of a client.... If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice.").

that Root had testified credibly regarding Ozan's role in the Blanco and Conroe proceedings—a determination that the Review Board made with full knowledge of Root's subsequent convictions. *See Commission Order I,* 12 F.C.C.R. at 2607 ¶¶ 13–14. The Commission ruled that the Review Board had given adequate reasons for crediting Root's testimony, pointing out not only that his testimony was corroborated by two other witnesses and by documentary evidence, but also that he had no apparent motive to lie. S&B offers no reason why Root's convictions, which were weighed by the Commission, render the ALJ's credibility determination "patently unsupportable."

S&B next argues that Baptist's testimony should not have been credited because he lied about the Castle Rock transmitter site. Despite Baptist's admitted perjury, the ALJ credited his account of Ozan's involvement in S&B's Blanco application. Affirming the ALJ's credibility determination, the Review Board stated: "The fact that Baptist voluntarily exposed himself to penal sanctions [by recanting] lends credence to his claim of truthfulness the second time he testified." *Review Board Order,* 2 F.C.C.R. at 5510 ¶ 34. Again, S&B offers no reason for questioning the ALJ's credibility determination.

Having considered S&B's remaining arguments and finding none persuasive, we affirm the Commission's determination that Ozan was the real party-in-interest behind S&B's Blanco application. Because the Commission found the real party-in-interest determination independently sufficient to justify S&B's disqualification, we need not consider S&B's challenge to the Commission's alternative determination that Schulze lied about the Castle Rock transmitter site.

### III

■ This brings us to SL's challenge to the agency's refusal to approve the proposed third-party settlement agreement. Joined by S&B, SL argues that the Commission's refusal to approve the settlement violates the 1997 Budget Act, conflicts with its own precedent, and is contrary to the public interest.

Section 3002(a)(3) of the Budget Act, which added section 309(*l*) to the Communications Act, authorized the Commission to resolve competing applications in then-pending comparative licensing proceedings through competitive auctions. *See* Pub.L. No. 105–33, § 3002(a)(3), 111 Stat. at 260. Entitled "Applicability of competitive bidding to pending comparative licensing cases," section 309(*l*) provides:

> With respect to competing applications for initial licenses or construction permits for commercial radio or television stations that were filed with the Commission before July 1, 1997, the Commission shall—
>
> (1) have the authority to conduct a competitive bidding proceeding . . . to assign such license or permit;
>
> (2) treat the persons filing such applications as the only persons eligible to be qualified bidders for purposes of such proceeding; and
>
> (3) waive any provisions of its regulations necessary to permit such persons to enter an agreement to procure the removal of a conflict between their applications during the 180–day period beginning on the date of enactment of the Balanced Budget Act of 1997.

47 U.S.C.A. § 309(*l*). Subsection (*l*)(3) required the Commission to waive any rules that would otherwise have prevented competing applicants in then-pending comparative proceedings from avoiding an auction by reaching a settlement.

The Commission interprets section 309(*l*) as not applying to the settlement in this case because SL and S&B are not "competing applica[nts]." *See Commission Order II,* 13 F.C.C.R. at 3264–65 ¶¶ 13–15; *see also Implementation of Section 309(j) of Communications Act,* 13 F.C.C.R. 15,920, 15,949 ¶ 78 (1998) ("SL Communications urges that the waiver [of the prohibition against non-party settlements] should apply to all comparative proceedings . . . even proceedings in which there is only one remaining applicant. . . . However, . . . the special settlement provisions of Section 309(*l*)(3) apply only to competing (i.e. mutually exclusive) applications.") (internal quotation omitted). SL was not even a party to the Blanco proceeding, the

# 1359

Commission observes, and as the lone remaining applicant, S&B was "competing" with no one. According to the Commission, the unambiguously clear language of section 309(*l*) compelled this conclusion. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). We agree.

To begin with, the Commission correctly determined that S&B was not "competing" with anybody when it proposed the settlement. Webster's defines "competing" as "seek[ing] or striv[ing] for something . . . *for which others are also contending.*" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 463 (3d ed.1993) (emphasis added). None of the other Blanco applicants was contending for the license; the Commission had disqualified them. SL could not have been contending for the license either, for it never became a party to the proceeding.

In support of its interpretation of the Act, the Commission also points out that subsection (*l*)(3) contemplates settlement agreements to "remov[e] . . . a conflict between . . . applications." Here there could have been no "conflict" between applications because S&B was the only remaining applicant.

Finally, subsection (*l*)(2) prohibits the Commission from allowing parties other than competing applicants to participate in auctions to resolve pending comparative proceedings. If section 309(*l*) covered S&B's lone application, as SL argues, and if the Commission chose to auction off the Blanco license, then (*l*)(2) would entitle S&B to "bid" for that license without any competition whatsoever. We have no doubt that Congress never intended such a perverse result.

■ Next, SL argues that even if section 309(*l*) does not apply, the Commission's rejection of the proposed settlement was arbitrary and capricious because it conflicted with agency precedent. To be sure, the Commission has recognized that voluntary settlements of comparative proceedings are generally in the public interest because they

conserve agency resources and expedite broadcasting service. *See Rebecca Radio of Marco,* 4 F.C.C.R. 830 (1989), *modified by Rebecca Radio of Marco,* 5 F.C.C.R. 937 (1990). But the Commission rejected the proposed settlement in this case on the ground that allowing S&B to recoup its expenses after acting so mendaciously before the agency would run counter to its policy of "deterring misconduct." *Commission Order I,* 12 F.C.C.R. at 2604–05 ¶ 9 & n. 1. According to SL, the Commission has approved third-party settlements even where the agency questioned the propriety of the settling applicant's conduct. It cites two cases for support: *Allegan County Broadcasters,* 83 F.C.C.2d 371 (1980), and *Gonzales Broadcasting,* 12 F.C.C.R. 12,253 (1997). We are satisfied that the Commission has adequately distinguished both cases.

In *Allegan,* the Commission approved a settlement despite unresolved character allegations against one of the withdrawing applicants. *See* 83 F.C.C.2d at 373 ¶ 6. Here, the Commission refused to follow *Allegan* because while in that case there had been no hearings regarding the character allegations, in this case the ALJ actually found S&B guilty of serious misconduct. *See Commission Order II,* 13 F.C.C.R. at 3264 ¶ 12. It is true, as SL points out, that at the time the Commission rejected the settlement in this case the ALJ's findings were still subject to judicial review. But surely there is nothing irrational about the Commission's determination that its policy of deterring misconduct controls where there are actual agency findings of misconduct—as opposed to mere allegations (the situation in *Allegan*)—whether or not those findings remain subject to judicial review.

In *Gonzales Broadcasting,* a post-Budget Act case, the Commission approved a settlement among six competing applicants through which the license was awarded to a newly-created corporation jointly owned in part by all six applicants, even though the ALJ had found two of the applicants guilty of misrepresentation and abuse of process. *See* 12 F.C.C.R. at 12,256–57 ¶¶ 11–13. As the Commission explained, newly-enacted section 309(*l*) controlled the *Gonzales* settlement be-

cause, unlike here, it involved six "competing" applicants. *See Commission Order II,* 13 F.C.C.R. at 3265 ¶ 14.

Finally, SL argues that the proposed settlement is in the public interest because it would result in prompt initiation of broadcast service to an unserved community. But we find nothing irrational in the Commission's expert determination that deterring the kind of serious misconduct engaged in by S&B better serves the public interest than expediting UHF service to Blanco.

### III

The disqualification of S&B and the rejection of the proposed settlement between S&B and SL are affirmed.

*So ordered.*